Argued January 10, affirmed January 30, petition for
rehearing denied February 26, 1963

# ANDERSEN-WESTFALL CO., INC. *v.* METRO-POLITAN HOTEL CORPORATION

## 377 P. 2d 914

*George W. Mead,* Portland, argued the cause for appellant. With him on the brief was Donald M. Lehman, Portland.

*Harry J. DeFrancq,* Portland, argued the cause for respondent. With him on the brief were James H. Clarke, John Gordon Gearin, and Koerner, Young, McColloch & Dezendorf, Portland.

Before McAllister, Chief Justice, and Perry, O'Connell, Goodwin and Lusk, Justices.

GOODWIN, J.

The plaintiff entered into a written agreement to build a hotel for the defendant for $6,920,316.00. Thereafter the plaintiff sued to terminate the agreement on the ground that the defendant had unreasonably delayed the plaintiff in its performance. From a decree denying relief, the plaintiff appeals.

Shortly after the written contract was executed, both parties learned that certain steel, not previously contemplated by the architects, would have to be included in the building. A document entitled Change Order No. 11 was thereupon executed by both parties. This memorandum records an agreement that the plain-

tiff would include the additional steel at a cost of some $228,486.00. The memorandum also contains the following:

"* * * The cost of any delays due to this revision after this date will be in addition to the Total Addition amount above and will be determined at a later date. The contractor's estimate of this additional delay referred to in his cost submittal for Supplement 12 and 21 dated February 23, 1961 is $6,000.00."

Thereafter the plaintiff encountered some further delay in receiving the steel from the fabricators. The plaintiff and defendant were unable to agree upon the reasonable cost of such additional delay. The plaintiff demanded some $201,890 above the amount shown in Change Order No. 11. The defendant offered $12,000.00. Thereupon the plaintfif gave notice of its intent to terminate the contract, and filed this suit for a judicial declaration permitting it to do so.

The plaintiff relies upon a provision in the contract that if the owner unreasonably delays the contractor in the performance of the work the contractor may terminate the contract upon twenty days notice. The sole question in this case is whether the delays that were encountered were unreasonable.

■■ As so-called proof that the delays were unreasonable, the plaintiff contends that the refusal of the defendant to meet the plaintiff's demands for more money made the delay unreasonable. Intransigence, if that is what it was, had nothing to do with the reasonableness or unreasonableness of the delay. The trial judge correctly treated the plaintiff's theory as a *non sequitur*. While it may be practical for one who has caused an unreasonable delay to buy his peace and thereby to mollify the injured party, it does not follow

that the failure immediately to satisfy some real or imaginary grievance arising out of an otherwise reasonable delay would make the delay itself unreasonable.

The reasonableness or unreasonableness of the delay must be found in the conduct which caused the delay. The defendant's willingness or unwillingness to accept at face value the plaintiff's estimate of the cost of the delay is quite another matter. We do not have before us a case in which either the reasonableness of the plaintiff's demand or of the defendant's offer is in issue. We express no opinion upon either matter. The sole issue before us is the reasonableness of a delay of some three to five months (depending upon whose interpretation of the evidence is the more convincing).

The suppliers of structural steel were unable to deliver the required material as rapidly as the plaintiff could have used it. Insofar as this case is concerned, the shortage of steel to satisfy Change Order No. 11 fully explains the delay. (Other matters, such as the refusal of the city to allow double-shifting by the contractor, may have had an adverse effect upon the plaintiff, but they are not relevant here.)

■ There is nothing in the record to justify an inference that the delay caused by the change in plans was either: (a) unreasonable, or (b) the fault of the defendant. While we do not consider the fact controlling, we note that the delay in delivering steel was that of subcontractors selected by the plaintiff. It is virtually undisputed, however, that the steel was delivered as quickly as it could be manufactured in the form specified for use in the building. Thus the fact that there was a change order remains as the only possible

ground for saying that the delay was caused by the defendant.

■ There can be no contention, however, that the defendant acted unreasonably in changing the structure at the time and in the manner it did. There was never any mystery about the change in structural-steel requirements. The hotel was being built with the aid of borrowed money. A few days after the bids were opened, all interested parties learned that the mortgagee would require a major change in engineering in order to make the structure conform to its requirements with reference to earthquake resistance. In view of the specific reservation by the defendant, in the prime contract, of the right to make such changes in design, the plaintiff can hardly say the exercise of this right was unreasonable. It was a part of the plaintiff's bargain. See *McGrath v. Electrical Const. Co.,* 230 Or 295, 315, 364 P2d 604, 370 P2d 231 (1961).

Affirmed.